UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHAEL HYUNG JIN KIM,<br><br>  Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>  Defendant. | Case No. 2:23-cv-00164-EJY<br><br>**ORDER** |

Michael Hyung Kim ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") finding Plaintiff was not disabled under Title II of the Social Security Act. ECF No. 9. The Commissioner filed a Response and Cross-Motion to Affirm (ECF Nos. 11, 12), and Plaintiff filed a Reply (ECF No. 13).

**I.   BACKGROUND**

Plaintiff filed an application for disability benefits on December 30, 2020, alleging disability beginning on August 1, 2020. Administrative Record ("AR") 200-206. The Social Security Administration denied Plaintiff's application initially and upon reconsideration after which Plaintiff requested a hearing before an Administrative Law Judge (the "ALJ"). AR 118-134. The ALJ held a hearing on November 19, 2021. AR 57-71. On January 4, 2022, the ALJ issued his decision finding Plaintiff not disabled from his alleged onset date through the date of the decision. AR 36-52. Plaintiff requested review of the ALJ's decision (AR 185-189), which was denied by the Appeals Counsel on December 20, 2022 (AR 1-7). Plaintiff now seeks judicial review of the Commissioner's decision under 42 U.S.C. § 405(g).

**II.   STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

1  Substantial evidence is "more than a mere scintilla." More than a scintilla of evidence means "such
2  relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ford v.*
3  *Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Biestek v. Berryhill*, -- U.S. --, 139 S.Ct. 1148,
4  1154 (2019)). In reviewing the Commissioner's alleged errors, the Court must weigh "both the
5  evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*,
6  807 F.2d 771, 772 (9th Cir. 1986) (internal citations omitted).

7  "When the evidence before the ALJ is subject to more than one rational interpretation, …
8  [the court] must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*,
9  53 F.3d 1035, 1041 (9th Cir. 1995). However, a reviewing court "cannot affirm the decision of an
10 agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc.*
11 *Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted). And, a court may not
12 reverse an ALJ's decision based on a harmless error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.
13 2005) (internal citation omitted). "[T]he burden of showing that an error is harmful normally falls
14 upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## III. ESTABLISHING DISABILITY UNDER THE ACT

To establish whether a claimant is disabled under the Social Security Act, there must be substantial evidence that:

> 1. the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> 2. the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A). "If a claimant meets both requirements, he or she is disabled." *Id.* (internal quotations omitted).

The ALJ uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (internal citation omitted); 20 C.F.R. § 404.1520. The claimant carries the burden of

proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

The five steps consider:

Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits. *Id*.

**IV.   THE SUMMARY OF ALJ'S DECISION**

The ALJ applied the 5-step sequential analysis under 20 C.F.R. § 404.1520 and determined Plaintiff met the insured status requirements of the Social Security Act through December 31, 2025. AR 40-51. The ALJ found Plaintiff had not engaged in substantial gainful activity since August 1, 2020, his alleged disability onset date (step one). AR 41. The ALJ concluded Plaintiff has severe impairments of bipolar disorder, post-traumatic stress disorder, and atrial fibrillation (step two). AR

3

41-42. The ALJ then concluded Plaintiff's impairments did not meet or equal the criteria in the Listing of Impairments found at 20 C.F.R. pt. 404, subpt. P, app. 1 (step three). AR 42-44. The ALJ determined Plaintiff retained the residual functional capacity ("RFC") to perform medium work with the following additional limitations: he could (1) occasionally stoop; (2) never climb ladders, ropes or scaffolds; (3) never work at heights or around dangerous moving machinery; (4) have no exposure to dusts, fumes, gases, or poor ventilation; (5) perform simple, repetitive tasks with reasoning levels up to two and three; and (6) can have no contact with the public.[1] AR 44-50. The ALJ concluded Plaintiff could not perform his past relevant work as an informal waiter, parking attendant or baggage porter (step four). AR 50. However, the ALJ determined Plaintiff could adjust to alternative work as a hand packer, laundry laborer, and general helper. AR 50-51. On this basis, the ALJ concluded Plaintiff was not disabled (step five). AR 51

In relevant part, the ALJ considered the following opinions from treating and non-treating physicians:

1.   Melody C. Deogracias, M.D., a member of Plaintiff's treatment team at the Veterans' Administration ("VA") hospital, diagnosed Plaintiff with "PTSD, [m]ajor [d]epression, [p]anic attacks, [and] [a]nxiety," and his prognosis was "[p]oor, guarded." AR 538. Dr. Deogracias reported Plaintiff was "[v]ery sad, gloomy, [has] panic attacks which are paralyzing, poor sleep, low appetite, mood swings, [and] irritability." *Id.* Dr. Deogracias noted the following clinical findings and objective signs: "[d]epressed mood, congruent affect, linear speech, [and] admits to auditory hallucinations." *Id.* Dr. Deogracias reported Plaintiff was "[i]ncapable of even 'low stress' jobs" because he "cannot cope with social adaptation or … people," and "during a typical workday," his symptoms are "constantly" "severe enough to interfere with **attention and concentration** needed to perform even simple work tasks." AR 539 (emphasis in original). The doctor further opined Plaintiff would need to take 15 minute unscheduled breaks once per hour during an 8-hour workday and Plaintiff is "likely to be absent from work as a result of the impairments or treatment … [m]ore than four days per month." AR 539-40.

---

[1] The RFC is the most a claimant can still do in a work setting despite impairment related limitations and is based on all the evidence in the record. 20 C.F.R. § 404.1545(a)(1).

4

2. David Abrams, LCSW, also part of Plaintiff's treatment team at the VA, reported in the Mental Residual Functional Capacity Questionnaire that he had bi-weekly appointments with Plaintiff since January 2021. AR 525. Mr. Abrams diagnosed Plaintiff with "PTSD, anxiety, seclusion, panic attacks, depression, [and] insomnia" and stated "treatment has not been effective." *Id*. Mr. Abrams further stated he tried "to find new ways to improve [Plaintiff's] symptoms," but found he could not "change [Plaintiff's] mood, behavior, [or] actions." *Id*. Mr. Abrams reported the side effects of Plaintiff's medications "may have implications for working" included "dizziness, drowsiness, muscle cramps, loss of appetite, diarrhea/upset stomach, headache, mood swings, restlessness/panic, irritability, [and] mental anguish." *Id*. Mr. Abrams reported clinical findings including: "affect and mood – repeating thoughts of traumatic event[,] thoughts and perception – avoidance of things related to event. Negative thoughts and repeating obsessive behavior." *Id*. Mr. Abrams opined that Plaintiff was "unlikely to fully recover but seeking treatment to cope with symptoms." *Id*. Mr. Abrams reported Plaintiff's "psychiatric condition exacerbate[s]" his "experience of pain or any other physical symptom" because he has "[p]anic and anxiety issues," and is "unable to eat/sleep properly with mental stress." AR 528. Finally, Mr. Abrams opined Plaintiff's impairments or treatment would cause him to be absent from work "[m]ore than four days per month," and that Plaintiff "cannot perform or adapt socially when panic or anxiety issues arise." AR 529.

3. Ben G. Kessler, Psy.D., the state agency psychologist at the reconsideration level (AR 49, 85), found Plaintiff was "[m]oderately limited" in "[t]he ability to understand and remember detailed instructions," but could "understand and remember simple instructions." AR 97-98. Dr. Kessler opined Plaintiff was "[m]oderately limited" in his "ability to complete a normal workday and workweek without interruption from psychologically based symptoms" as well as in his "ability to perform at a consistent pace without an unreasonable number and length of rest periods." AR 99. In an attempt to explain his opinions, Dr. Kessler simply reported that Plaintiff "can sustain concentration, persistence and pace for very short, simple tasks/instructions but not for complex tasks/instructions." *Id.* Dr. Kessler also found Plaintiff was "[m]oderately limited" in "[t]he ability to interact appropriately with the general public" and "[t]he ability to accept instructions and respond

appropriately to criticism from supervisors." *Id*. Remarkably, and despite the inability to accept instructions or criticisms from a supervisor, Dr. Kessler found Plaintiff "could respond appropriately to normal supervision." AR 100. Dr. Kessler also noted Plaintiff "would have difficulty interacting with the public, so is limited to work not requiring public contact." *Id*. Dr. Kessler concluded Plaintiff "retains the ability to understand, remember, carry out and sustain simple work-related tasks in a work-setting with reduced interpersonal contact." AR 101.

V.  **DISCUSSION**

  A.  The Parties' Arguments.

Plaintiff contends the ALJ's finding regarding the degree of Plaintiff's social interaction limitations was erroneous because (1) the finding was inconsistent with the record as a whole; (2) Dr. Kessler's opinions, upon which the ALJ solely relied, are internally inconsistent; and (3) the ALJ failed to properly consider the regulatory factors of supportability and consistency in evaluating Dr. Kessler's opinions. ECF No. 9 at 6-10. Regarding consistency, Plaintiff argues the ALJ failed to properly consider other evidence in the record, including the opinions of Dr. Deogracias, Mr. Abrams, and Allie Wright, Psy.D.[2] *Id.* at 9. Plaintiff further contends the ALJ failed to properly evaluate Dr. Deogracias' and Mr. Abrams' opinions. *Id.* at 11-14. Plaintiff asks the Court to reverse and award benefits; or, alternatively, remand this matter for further administrative proceedings. *Id.* at 14.

The Commissioner argues the ALJ reasonably evaluated prior administrative medical findings and medical opinions of record including opinions regarding Plaintiff's ability to socially interact. ECF Nos. 11, 12 at 5. The Commissioner contends the opinions of Dr. Deogracias, Dr. Wright, and Mr. Abrams did not indicate they considered the same evidence as Dr. Kessler or provide the same detailed and specific summary of the evidence of record to support their opinions.

---

[2] Allie Wright, Psy.D., the state agency psychologist at the initial level, found Plaintiff would be capable of understanding, remembering, and carrying out "simple and detailed instructions and maintaining attention/concentration for same." AR 81. However, Dr. Wright also stated Plaintiff was moderately limited in his "ability to accept instructions and respond appropriately to criticism from supervisors," should have "[n]o fast-paced production demands," and "can occasionally interact with supervisors," but "should have minimal contact with coworkers and the general public," and "changes should be routine in nature." *Id.* Dr. Wright concluded Plaintiff was moderately limited in "[t]he ability to maintain attention and concentration for extended periods," "complete normal workday and workweek without interruptions from psychologically based symptoms," and "perform at a consistent pace without an unreasonable number and length of rest periods." *Id.*

6

*Id.* at 6. The Commissioner contends the ALJ relied on numerous objective medical examinations showing largely normal mental status in support of his conclusion that Plaintiff's mental status was "mild." *Id*. at 7. The Commissioner concludes the ALJ's decision was supported by the evidence. *Id.*

The Commissioner asserts the ALJ did not err when he found Dr. Kessler's opinions were persuasive because the doctor's findings were consistent with Plaintiff's mental status examination results. *Id.* at 7. The Commissioner argues the ALJ resolved any ambiguity in Dr. Kessler's findings, and ultimately reasonably found Dr. Kessler's prior administrative findings persuasive. *Id.* at 8-9. Regarding Mr. Abrams and Dr. Deogracias, the Commissioner argues the ALJ reasonably concluded their opinions lacked supportability and consistency with the record as a whole despite admitting these treatment health care professionals' opinions are based on the same records as Dr. Kessler's opinions. *Id.* at 9-12. The Commissioner concludes that if the Court finds harmful error, this issue should be remanded for further proceedings. *Id.* at 12-13.

Plaintiff replies that if Dr. Kessler's opinions are based on VA records, he relied on the same source of information as Dr. Deogracias and Mr. Abrams; that is, Dr. Deogracias' and Mr. Abrams' treatment records pertaining to Plaintiff. ECF No. 13 at 3. Likewise, Plaintiff submits that if Dr. Kessler on the one hand, and Dr. Deogracias and Mr. Abrams on the other hand, relied on the same records when assessing Plaintiff, there is no basis to find Dr. Deogracias and Mr. Abrams less persuasive than Dr. Kessler. *Id*. at 4. Plaintiff further contends the ALJ is not qualified to interpret Plaintiff's mental status examinations as "mild" given that this characterization is contrary to other medical opinions. *Id.* Plaintiff suggests objective evidence, such as mental status exam findings, must be considered only under supportability not consistency, another alleged error made by the ALJ. *Id.* at 5.[3] Plaintiff argues the ALJ committed revisable error when he failed to explain why reliance on Plaintiff's self reports of mental health problems resulted in Dr. Deogracias and Mr. Abrams' offering unpersuasive opinions. Finally, Plaintiff says the ALJ failed to cite to any evidence

---

[3] Neither the case law nor the regulation to which Plaintiff cites for this proposition supports Plaintiff's conclusion. Objective evidence may be considered to establish the supportability of a medical opinion; however, this does not necessarily exclude considering the same evidence when examining consistency. *See, e.g., Pacheco v. Kijakazi*, Case No. 1:22-cv-0190 JLT HBK, 2023 WL 5348362, at *1 (E.D. Cal. Aug. 21, 2023).

7

showing the treating sources relied more on Plaintiff's subjective reports than their clinical observations. *Id*. at 6.

        B.        <u>The Legal Framework for Assessing Medical Opinions</u>.

The Social Security regulations establish the required method for assessing differing medical opinions. An ALJ is not required to "articulate in each determination or decision how [he] considered all of the factors for all of the medical opinions and prior administrative findings" in a plaintiff's case record. 20 C.F.R. § 416.920c(b)(1). Rather, the ALJ "will articulate how [he] considered the medical opinions or prior medical finding(s) from that medical source together in a single analysis." 20 C.F.R. § 416.920c(b)(2). The ALJ must consider each medical opinion and prior administrative finding to determine persuasiveness by looking at supportability and consistency, and then, only in some instances, at other factors found in 20 C.F.R. § 416.920c(b)(2). Supportability means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Consistency means "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2). An ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," including the claimant's medical sources. 20 C.F.R. § 416.920c (a).

        C.        <u>Supportability</u>.

              i.        *The ALJ failed to discuss internal inconsistencies in Dr. Kessler's findings, thus failing to properly analyze supportability*.

Internal inconsistencies in a medical opinion "constitute relevant evidence" when weighing medical opinions, *Morgan v. Comm'r Soc. Sec. Admin*., 169 F.3d 595, 603 (9th Cir. 1999), and are a "permissible basis for discounting a medical source's opinions pursuant to the supportability

8

factor." *Michael B Wallace, Plaintiff, v. Comm'r of Soc. Sec. Admin., Defendant.,* Case No. CV-22-00971-PHX-DWL, 2023 WL 6389370, at *7 (D. Ariz. Sept. 30, 2023). Dr. Kessler opines Plaintiff is "moderately limited" in "[t]he ability to accept instructions and respond appropriately to criticism from supervisors," (AR 99), but concludes Plaintiff "could respond appropriately to normal supervision.…" AR 100. These statements are in conflict if not clearly inconsistent. Even if one presumes criticism of subordinates is not part of every day supervision, giving instructions to subordinates is no doubt what supervisors regularly and routinely do. The ALJ fails to address how Plaintiff's moderate limitation in accepting instructions from a supervisor is coextensive with his supposed ability to respond to "normal supervision." This failure cannot be overlooked by the Court. The ALJ's silence with respect to this obvious conflict is error. *Stout*, 454 F.3d at 1054-56. A review of the record does not support the conclusion that the ALJ's failure to resolve this conflict was harmless error and, for this reason, the Court properly finds a lack of substantial evidence supports the ALJ's decision. *Rounds v. Commissioner of Social Security*, 807 F.3d 996, 1004 (9th Cir. 2015) (internal citations omitted). Further, the error is not harmless because the error was neither non-prejudicial to Plaintiff nor irrelevant to the ALJ's disability determination. *Id.* at 1055.

>    ii.   *The ALJ provided only conclusory reasons for finding Mr. Abrams' and Dr. Deogracias' opinions lacked supportability.*

An ALJ may not provide a conclusion "without showing his reasoning is supported by substantial evidence." *Johnathon F. v. Comm'r of Soc. Sec.*, Case No. C22-6006 RSM, 2023 WL 4073985, at *3 (W.D. Wash. June 20, 2023); *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) ("The ALJ must do more than offer his conclusions."). "The ALJ should clearly explain how identified findings conflict with specific limitations and not leave it to the Court to speculate as to the basis of his opinion." *Frias v. Saul*, Case No. 1:20-cv-00097-JLT, 2021 WL 1811992, at *8 (E.D. Cal. May 6, 2021).

The fact that a physician may rely in part on the claimant's self-reported symptoms when forming a medical opinion regarding mental illness is not sufficient reason to reject the opinion. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). "Psychiatric … [d]iagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient."

9

*Id*. This "is the nature of psychiatry." *Id*. "Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Id*.

The ALJ rejected Dr. Deogracias' and Mr. Abrams' opinions because they were not well-supported by the mental status exam findings and did not support such extreme mental functional limitation, but were instead primarily based on Plaintiff's subjective reports of symptoms. AR 48-50. In doing so, the ALJ failed to recognize the inherent nature of treating mental illness, which will always depend in part on the patient's self-report. The ALJ also, once again, ignores that Dr. Kessler relied on Dr. Deogracias' and Mr. Abrams' treating records in reaching his conclusions. AR 86-91 *citing* 431-432, 439-444, 445-446, 446-466; AR 87 *citing* Dr. Wright's notes at AR 77 (diagnosing Plaintiff with severe depressive bi-polar disorder, anxiety, and obsessive compulsive disorder). The ALJ's conclusion does not touch upon or in any fashion address the facts that Dr. Deogracias and Mr. Abrams, who treated Plaintiff for many months, made objective findings from which they derived conclusions. AR 48-50, *and compare* AR 525 (noting Mr. Abrams' "clinical findings" demonstrating the severity of Plaintiff's mental impairment and symptoms); AR 538 (noting the following "clinical findings and objective signs" observed by Dr. Deogracias: "[d]epressed mood, congruent affect, linear speech … admits to auditory hallucination[s]"). *See also Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014) (acknowledging ALJ erred in failing to recognize that physicians' opinions were based on "significant experience" with the claimant, and thus "treatment notes created by [physicians] in the course of their relationship with [the claimant]" were relevant in considering those physicians' opinions).

Overall, the ALJ failed to support his finding that neither Dr. Deogracias' nor Mr. Abrams' opinions were persuasive with specific and legitimate reasoning. This error, especially in light of the fact that the treatment of Plaintiff by these health care providers formed a substantial basis for Dr. Kessler's opinion, was not harmless. *Johnathon F.*, 2023 WL 4073985, at *3. Rather, this error directly impacted the ALJ's finding that Plaintiff was not disabled. AR 50.

D. <u>Consistency</u>.

i. *The ALJ cherry picked from the record to support his consistency findings, thus, committing harmful error.*

"[D]istrict courts have found that the ALJ errs when she ignores evidence supporting or consistent with a rejected medical opinion." *Renee N. v. Kijakazi*, Case No. 6:20-cv-01131-SB, 2021 WL 4554475, at *9, n.5 (D. Or. Oct. 5, 2021) (collecting cases). As such, "an ALJ must consider all relevant evidence in the record and may not point to only those portions that bolster his findings." *Kristine S. R. v. Saul*, Case No. ED CV 19-1540-PLA, 2020 WL 3578048, at *8 (C.D. Cal. June 30, 2020), *citing Holohan v. Massanari,* 246 F.3d 1195, 1207-08 (9th Cir. 2001). The "ALJs may not 'cherry-pick' from 'mixed results to support a denial of benefits,' especially in the context of mental illnesses which may exhibit fluctuations in symptoms such that 'any single notation that a patient is feeling better or has had a good day does not imply that the condition has been treated.'" *Leah K. v. Comm'r of Soc. Sec.*, 616 F. Supp. 3d 1099, 1107 (D. Or. 2022) (quoting *Garrison*, 759 F.3d at 1017 n.23).[4] With regard to disability arising from claimed mental illness, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017 (citing *Holohan*, 246 F.3d at 1205); *Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir. 2011) (citations omitted) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce, and that difference is borne out in [the] treatment notes. Those notes show that although [plaintiff] had improved with treatment, [ ]he nevertheless continued to frequently experience bouts of crying and feelings of paranoia. The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits."). "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being

---

[4] As of the date of this Order, the Ninth Circuit has not weighed in on whether, under the new regulations applicable to applications filed on or after March 17, 2017, cherry picking from the record constitutes reversable error. However, the Seventh Circuit has applied the same prohibitions to the current applicable standards. *Dzafic v. Kijakazi*, Case No. 22-2090, 2023 WL 2536340, at *5 (7th Cir. Mar. 16, 2023). Numerous district courts across the country, applying the new regulations, have remanded where the ALJ has cherry-picked the record. *Buethe v. Comm'r of Soc. Sec.*, Case No. 2:20-cv-552-KJN, 2021 WL 1966202, at *5 (E.D. Cal. May 17, 2021) (collecting cases).

11

and the nature of [his] symptoms." *Id.* (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200-01 (9th Cir. 2008)); *Holohan*, 246 F.3d at 1205 ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect [his] ability to function in a workplace").

In making his consistency findings, the ALJ found Plaintiff's mental status exam findings were "generally mild" leading the ALJ to conclude Dr. Kessler's opinion was consistent with the record while Dr. Deogracias' and Mr. Abrams' opinions were not. AR 48-50. In making these characterizations, the ALJ impermissibly "focused on select portions of … treatment notes – the mental status examinations – as a basis for his decision and altogether omitted or discounted consideration of the fact that additional significant information in the same records reflecting unremarkable mental status examinations … is *not* consistent with the ALJ's determination." *Kristine S. R.,* 2020 WL 3578048, at *8. "[W]hile the mental status examination itself may have reflected" generally mild mental status exam "findings, the corresponding treatment notes – which were significantly more detailed – reflected poorly or fairly controlled symptoms." *Id.* To elaborate, the following all arise from the same instances of treatment that the ALJ cited to in support of his consistency conclusions:

1. Plaintiff repeatedly reported auditory hallucinations. AR 313 (March 16, 2021); AR 330 (February 2, 2021); AR 439 (May 25, 2021); AR 503 (August 26, 2021); AR 545 (November 4, 2021). Plaintiff was diagnosed with major depressive disorder with psychosis due to his frequent auditory hallucinations. AR 545. There is no evidence in the record that these hallucinations, which often occur at night, had been resolved. The ALJ did not address these symptoms or diagnoses.

2. Plaintiff repeatedly struggled with insomnia. *See, e.g.,* AR 313 (reporting "I just cannot sleep," sleeping only 2 to 4 hours per night); AR 342 (reporting he was getting "3-4 hours of broken and restless sleep per night"); AR 330 ("Vet reported problem with sleep [due to] frequent [nightmares]"); AR 439 (reporting he could not sleep because he "[p]anics at night usually or in late afternoon"). The ALJ attempted to resolve this issue by claiming in November 2021 Plaintiff "described improved sleep of four to six hours per night." AR 47. However, just because Plaintiff's

symptoms had temporarily improved does not mean the sleep issues were resolved. *Garrison*, 759 F.3d at 1017. The ALJ also failed to mention that despite a single report of improved sleep, the same treatment report notes Plaintiff is still struggling with panic attacks, which Plaintiff reported was just two days prior to the appointment. AR 545. Plaintiff further reported "he can't do anything when" he has a panic attack—instead, he "feels paralyzed." *Id*. Plaintiff explained that during panic attacks he forgets to eat, forgets to take his medication, and was still experiencing auditory hallucinations. *Id*. The ALJ does not mention this portion of the single improved sleep report on which he relies.

   3. Plaintiff repeatedly struggled with panic attacks and was diagnosed with a panic disorder. AR 307 (reporting "panic attacks and anxiety," and his "mood was anxious and affect matched mood"); AR 439 (reporting "panic attacks and anxiety"); AR 503 (reporting Plaintiff was "always nervous thinking about having panic attacks, worries about having another panic attack. States they occur randomly[,] and frequency varies. Cannot function when having a panic attack. They last for a day or longer and bad ones last longer, for a few more days. Not currently working, had to quit job in April. Can handle his depression when he was working but not the anxiety attacks," and reporting a diagnosis for panic disorder); AR 545 (reporting "panic attacks have lessened in frequency," but that last panic attack lasted 7.5 hours). While the ALJ discussed Plaintiff's hearing testimony regarding panic attacks including that "in a typical week he could have one to three panic attacks," (AR 46), the ALJ does not address that Dr. Deogracias and Mr. Abrams reported Plaintiff struggles with panic and anxiety and diagnosed him with a panic disorder.

   4. Plaintiff repeatedly reported issues with performing basic daily self-care tasks. AR 313 (reporting Plaintiff sometimes would not eat all day, other times binge ate); AR 322 (reporting Plaintiff "struggles with self-care," including activities of daily living, and sometimes not eating all day other times binge eating); AR 330 ("He reports he has days where he loses time, finds it hard to get thoughts and time organized, he forgets to eat and/or bath[e]"); AR 545 (reporting frequent panic attacks and "he can't do anything when it happens, he feels paralyzed," and that some days he does not eat because he is "thinking about stuff"). The ALJ's discussion of Plaintiff's daily living activities is silent in the face of these reports. AR 46-47.

The ALJ's failure to address the above summarized parts of Plaintiff's medical records supports the Court's finding that the ALJ "cherry picked" from the record when forming his conclusions. Further, even if the ALJ had considered the above and nevertheless reached the decisions he did, the ALJ failed to show his work. *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (an ALJ is required to "show his work" when reaching his conclusions). And, although "an ALJ [may] articulate a cursory rationale on the supportability and consistency factors where there [is] *no* evidence in the record to support a medical opinion," *Buethe v. Comm'r of Soc. Sec.*, Case No. 2:20-cv-552-KJN, 2021 WL 1966202, at *6 (E.D. Cal. May 17, 2021) (emphasis in original) (collecting cases), here, the ALJ ignored evidence supporting Dr. Deogracias' and Mr. Abrams' medical opinions that is contrary to Dr. Kessler's opinion. For the reasons state above, the Court finds the ALJ's findings regarding the consistency of Dr. Deogracias', Mr. Abrams', and Dr. Kessler's opinions is not supported by substantial evidence. This was not harmless error.

## VI.  ORDER

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and Remand (ECF No. 9) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Defendant's Cross-Motion to Affirm (ECF No. 11) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that this matter is remanded for further administrative action pursuant to the Social Security Act § 205(g), as amended, 42 U.S.C. § 405(g), sentence four. On remand, the Appeals Council will remand the case to an administrative law judge (ALJ) for a new decision.

DATED this 1st day of November, 2023.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE